IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                Case No. 19-10023-2-JWB

KEVAS L. BALLANCE,

    Defendant.

## **MEMORANDUM AND ORDER**

This case comes before the court on Defendant's motion to suppress (Doc. 65). The motion has been fully briefed (Doc. 73) and the court held an evidentiary hearing on December 19, 2019. Defendant's motion is DENIED for the reasons herein.

### I.     **Facts and Procedural History**

On May 1, 2018, Charles Shell was employed as an officer with the Newton Police Department and was on patrol. Shell received a dispatch over the radio regarding suspicious activity that was reported to 911. According to the dispatcher, an unidentified employee from Hibbett Sports in Newton, Kansas, stated that there was an individual that had left the store approximately five minutes earlier. This individual had been attempting to return an item to the store. The individual matched the description of an individual who had previously passed counterfeit bills on an unknown date. The employee described the individual as a black male, wearing a white shirt and blue jeans. Additionally, the employee stated that the individual left the store in a black Nissan Armada and that the vehicle was traveling northbound on Main Street. The employee also relayed the license plate information to dispatch. This information was given to

1

Shell.[1]  At the time, Shell was traveling southbound on Main Street, approximately a mile and a half north of Hibbett Sports.  Officer Luke Winslow was at the jail at the time the information was relayed over dispatch.  Winslow testified that he recalled that the employee reported that the suspect was returning athletic shoes that had been purchased with counterfeit currency and that the suspect had been involved in this fraudulent conduct at a Hibbett Sports store in a neighboring city.  Although Winslow did not recall if the employee gave the date of the prior transaction, he testified that he understood the transaction to have occurred recently.

Shell observed a black Armada parked on the north side of a parking lot at a Dillon's store.  The Armada then pulled through the parking lot and parked at a gas pump at a nearby Kwik Shop.  Shell observed that it was being driven by a black male with a white t-shirt.  Shell also confirmed that the license plate number was the same plate number reported to dispatch.  Shell pulled in behind the Armada.  The driver and a passenger exited.  The passenger was a black male wearing a white t-shirt and jeans.  The passenger looked down and away from Shell as he walked by him.  Shell then made contact with the driver.  The driver stated that his name was Joseph Richard.  Richard informed Shell that he had been at the Hibbett Sports store.  Richard stated that his passenger was attempting to return some shoes at the store.  Shell asked Richard for his identification.  Richard then opened the rear door of the vehicle and, in doing so, Shell observed two pairs of shoes in a Hibbett Sports bag on the floor of the vehicle.  Richard stated that the shoes were the ones that the passenger was trying to return and that they had just been purchased the day before.  Richard stated that his passenger was Kevas (referred to throughout as "Defendant").  Richard stated that Defendant, who had gone inside the store, was going to come back to the

---

[1] Based on Shell's testimony, he was having some difficulty recollecting exactly what was relayed from the dispatcher. His testimony was based on his memory as he did not have his report.

vehicle. After being asked questions regarding the store and counterfeit currency, Richard told Shell and Officer Luke Winslow, who arrived on the scene, to ask Defendant.

Shell then observed that Defendant walked out of the store and then began walking towards the street instead of returning to the vehicle. Shell asked Richard if that was Defendant. Richard responded that it was. Winslow got into his patrol car and drove towards Defendant. Winslow then told Defendant to come and talk to him. Defendant walked over. Winslow then patted him down to check for weapons. Defendant admitted that he had been in the vehicle with Richard but said that he was walking to the liquor store. Winslow told Defendant that there is not a liquor store in the direction that Defendant was walking. Defendant stated that there had to be a liquor store in that direction. Winslow asked Defendant for his identification. Defendant provided Winslow with identification from the Kansas Department of Corrections. Defendant stated that he was in Newton to try to return shoes for his cousin but that the store would not let him return the shoes because his identification did not have an address listed on it. Winslow asked Defendant if he could look at the bills that were in his wallet. Defendant then handed the wallet over to Winslow who looked through it and handed it back. Winslow then asked Defendant why the store would say that Defendant had been passing counterfeit bills. Defendant then put his hand in his pocket. Winslow told Defendant to take his hand out of his pocket and asked him if he could make sure that Defendant had nothing in his pockets. Defendant responded by stating, "go ahead." Winslow then searched Defendant's pockets. Defendant had a full sheet of counterfeit currency in one pocket. The counterfeit currency was seized, and Defendant was arrested. During the booking procedure, additional counterfeit currency was discovered in Defendant's shoe.

Defendant moves to suppress the seized items on the basis that the officers did not have reasonable suspicion to stop him and that his consent to search his pockets was involuntary.

3

## II. Analysis

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court "established that a law enforcement officer may, in appropriate circumstances and in an appropriate manner, approach a person to investigate possible criminal behavior even if he lacks probable cause to arrest." *United States v. Whitley,* 680 F.3d 1227, 1232 (10th Cir. 2012) (citation omitted.) To be considered reasonable, such an "investigatory detention" must be justified at its inception and be reasonably related in scope to the circumstances that justified the interference in the first place. *United States v. Martinez,* 910 F.3d 1309, 1313 (10th Cir. 2018).

Whether reasonable suspicion exists does not depend on any one factor, but on the totality of the circumstances. *Id*. Before initiating an investigatory stop, an officer must have a "particularized and objective basis for suspecting an individual may be involved in criminal activity." *Id.* (citation omitted.) "A confidential tip may justify an investigatory stop if under the totality of the circumstances the tip furnishes both sufficient indicia of reliability and sufficient information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." *United States v. Madrid*, 713 F.3d 1251, 1258 (10th Cir. 2013) (quoting *United States v. Leos–Quijada*, 107 F.3d 786, 792 (10th Cir. 1997)).

> [R]elevant factors include: (1) whether the informant lacked "true anonymity" (i.e., whether the police knew some details about the informant or had means to discover them); (2) whether the informant reported contemporaneous, firsthand knowledge; (3) whether the informant provided detailed information about the events observed; (4) the informant's stated motivation for reporting the information; and (5) whether the police were able to corroborate information provided by the informant.

*Id.* No single factor is dispositive. *Id.*

In this case, the officers knew that the caller was an employee at the Hibbett Sports store. As such, the informant was not entirely anonymous and the officers had means to discover the identity of the caller by going to Hibbett Sports and speaking with the employee. *See United States v. Chavez*, 660 F.3d 1215, 1222 (10th Cir. 2011) (caller did not provide name but stated that he was an employee at a specific Wal-Mart store). With respect to the second factor, the employee was reporting contemporaneous, firsthand knowledge regarding the suspect's actions at the Newton store. The individual had just left the store five minutes prior. But based on the employee's statement that the suspect "matched the description" of an individual who was suspected of passing counterfeit currency, the employee was likely not relaying firsthand knowledge of the suspected criminal activity. With respect to the third factor, the employee provided specific information regarding the make, model, and license plate number of the vehicle and a description of the individual at the store. The vehicle was reportedly traveling north on Main and that vehicle was then located north of the store and on Main Street. Moreover, the individual was wearing clothing that matched the employee's description. Again, this does not go to specific information regarding criminal activity but rather information that would enable the officers to identity the suspect. A tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (quoting *Fla. v. J.L.*, 529 U.S. 266, 272 (2000)). With respect to information regarding the criminal activity, the employee stated that the individual was attempting to return athletic shoes that were purchased with counterfeit currency. Dispatch did not relay or the employee did not report how he or she knew that those particular shoes were the shoes that were purchased with counterfeit currency. Although there was not a specific date and location of the previous purchase, Winslow testified that he believed that it was recent and at a different Hibbett Sports store in a

neighboring city. With respect to the fourth factor, the motivation for the call was to report an individual who was suspected of criminal activity on a previous occasion at another Hibbett Sports store. *See Chavez*, 660 F.3d at 1222. Finally, the police were able to corroborate some of the information provided by the employee. The vehicle's license plate matched the license plate number given; the vehicle matched the description; and Defendant matched the description provided. Additionally, Richard corroborated the information by admitting that Defendant had been in the Hibbett Sports store trying to return some shoes. Moreover, Richard told the officers that although they had not purchased anything on that day, they had purchased the shoes on the previous day. The facts that were corroborated by Richard provide additional reliability to the information in the employee's 911 call. *See United States v. Carroll*, 491 F. App'x 900, 903 (10th Cir. 2012)

Defendant argues that the information provided by the employee was not sufficient to support a suspicion that Defendant had been the individual who previously passed the counterfeit bills, only the conclusion that Defendant was the individual identified by the employee. Defendant cites to *United States v. Martinez*, *supra*, in support of the position that the generic description is not sufficient. *Martinez*, however, is distinguishable. In that case, the officer had knowledge that a car with a certain make and color was possibly involved in a robbery that occurred more than 65 miles away and involved a Native American wearing glasses. *Martinez,* 910 F.3d at 1316. The license plate of the vehicle was not provided. The circuit court held that this was insufficient to support a finding of reasonable suspicion. *Id.* In this case, the officers were provided with the license plate number of the vehicle and the direction of travel. Moreover, the vehicle was then located a short distance away from the Hibbett Sports store and on the same street. Additionally, although the description of the individual given to dispatch may have described clothing that could

be worn by a number of people- jeans and a white t-shirt- Defendant was wearing that clothing while riding as a passenger in the same vehicle.

Defendant's argument is that the caller's information is not reliable unless he provides more background information regarding the description of the individual on the date the individual passed the counterfeit currency. As stated at the hearing, the government has clearly established that the employee provided reliable information regarding the individual who was in the store and attempting to return the shoes. The information provided by the caller must also provide sufficient information to support "reasonable suspicion that criminal conduct is, has, or is about to occur." *Madrid*, 713 F.3d at 1258. The employee stated that Defendant matched the description of the individual who passed counterfeit currency but did not explain how or why Defendant matched the description of the individual. Dispatch was not provided with the description that the employee was given, presumably by another employee who witnessed the purchase. The employee did state that the individual (Defendant) was attempting to return athletic shoes that were purchased with the counterfeit currency. Based on the employee's representation that the shoes that Defendant was attempting to return were the shoes previously purchased with counterfeit currency, the court finds that it is reasonable for an officer to assume that the individual attempting to return the shoes is the same individual who purchased those shoes in the first instance. Moreover, viewing all of the facts, there is simply no evidence to support the conclusion that the employee concocted this story. The employee was not entirely anonymous as he was an employee of a specific store in Newton and the officers had the ability to follow up with this employee in their investigation. *See Carroll*, 491 F. App'x at 903 ("The fact the caller provided authorities some basis for discovering [his] identity makes it ... less likely [his] tip was phony.") (citation omitted).

That said, the court is to look at the totally of the circumstances to determine whether the officers had reasonable suspicion to suspect Defendant of criminal activity. The employee's 911 call is not the entirety of the circumstances known to the officers at the time Defendant was questioned. The officers had also learned additional information from their discussion with Richard. Notably, Richard's statements corroborated the information relayed by the employee. Richard stated that Defendant attempted to return shoes to Hibbett Sports. Richard also had those shoes in the back of his vehicle and the shoes had just been purchased the previous day. Richard also told the officers to talk to Defendant about passing counterfeit currency. This fact is significant in that rather than outright denying any involvement in counterfeit currency, Richard deflected the officer's inquiry on that topic to Defendant.

Moreover, the court finds that Defendant's conduct upon seeing the officers also contributes to the officers' reasonable suspicion of criminal activity. "Unprovoked flight upon noticing the police" is a factor in determining reasonable suspicion. *Carroll*, 491 F. App'x at 903. Upon seeing Shell, Defendant avoided eye contact with the officer and went into the store. Richard expected Defendant to return to the vehicle after leaving the store. Defendant did not. Rather, Defendant left on foot. The officers believed that Defendant was attempting to flee the area. Therefore, these actions by Defendant contribute to the officers' reasonable suspicion of criminal activity. *Id.*

The court finds that the 911 call, the corroborated facts by Richard, and Defendant's actions in attempting to flee provided the officers with a particularized and objective basis for suspecting Defendant had been involved in criminal activity. *See Madrid*, 713 F.3d at 1262.[2] The court finds

---

[2] The fact that the suspected criminal activity being investigated was in the past does not diminish the suspicion. The Supreme Court has "held that the Fourth Amendment permits police officers to conduct an investigatory stop if they have a 'reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in

that Winslow's actions in stopping Defendant and questioning him were reasonable under the Fourth Amendment. Moreover, Officer Winslow's suspicion of criminal activity was further heightened when Defendant attempted to explain his unexpected flight from the area by stating that he had decided to walk to a non-existent liquor store rather than return to the vehicle, as Richard indicated he would.

With respect to the search of Defendant's pockets, the government contends that Defendant gave consent to search. Voluntary consent is a recognized exception to the Fourth Amendment's requirement that searches must be conducted pursuant to a warrant and with probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The voluntariness of a defendant's consent to search "is a question of fact to be determined from the totality of all the circumstances." *United States v. Ramos*, 723 F. App'x 632, 639 (10th Cir. 2018), *cert. denied,* No. 17-9203, 2018 WL 2725957 (U.S. Oct. 1, 2018) (quoting *Schneckloth*, 412 U.S. at 227)). "The government bears the burden of showing the consent was voluntary by (1) proffering clear and positive testimony that consent was unequivocal and specific and freely given and (2) proving that this consent was given without implied or express duress or coercion." *United States v. Flores*, 641 F. App'x 817, 821 (10th Cir. 2016) (quoting *United States v. Salas*, 756 F.3d 1196, 1203 (10th Cir. 2014)). In determining whether consent was voluntary, some relevant considerations include:

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the [person who gave consent], the number of officers on the scene, and the display of police weapons. Whether an officer ... obtains consent pursuant to a claim of lawful authority, or informs [someone] of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*Id.* (quoting *United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012)).

---

or is wanted in connection with a completed felony.'" *United States v. Moran*, 503 F.3d 1135, 1141 (10th Cir. 2007) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)).

The court has reviewed the video of the interaction between Defendant and Winslow. Although Winslow was in uniform and had a service weapon, the weapon was holstered. Shell was not present during this time and remained with Richard by the gas pump. Therefore, only one officer was present during the interaction with Defendant. Winslow did not threaten Defendant, and while the officer's tone of voice was firm and direct, it was not aggressive. Winslow asked Defendant if he could search his pockets and Defendant immediately said, "go ahead." There is no indication that Defendant was coerced, threatened, made promises, or tricked. Defendant argues that Winslow's tone was accusatory and that Winslow essentially called him a liar, thereby rendering his consent involuntary. Defendant, however, cites no authority for this proposition. Based on the totality of the circumstances, the court finds that Defendant voluntarily consented to the search of his pockets.

### III. Conclusion

Defendant's motion to suppress (Doc. 65) is DENIED.

IT IS SO ORDERED this 16th day of January 2020.

          ___s/ John W. Broomes_____
          JOHN W. BROOMES
          UNITED STATES DISTRICT JUDGE